UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

HDI GLOBAL SE f/k/a HDI-GERLING
INDUSTRIE VERSICHERUNG AG,

                         Petitioner,

           -against-

PHILLIPS 66 COMPANY,

                       Respondent.

------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___8/26/22____
```

22-CV-807 (VEC)

<u>ORDER</u>

VALERIE CAPRONI, United States District Judge:

On December 21, 2021, as part of ongoing arbitration proceedings between Petitioner HDI Global SE ("Gerling") and Respondent Phillips 66 Company ("P66"), a three-person arbitral tribunal ("Tribunal") issued an order[1] in which it (1) granted Gerling's request for reimbursement in the amount of $725,421.94 for what the Tribunal deemed a premature payment to P66 and (2) corrected clerical errors made in a previous decision. Pet. Mem. of Law, Dkt. 8 at 6–7. On January 31, 2022, Gerling moved to confirm both decisions. *See generally* Petition, Dkt. 6. P66 opposes the motion. *See generally* Resp. Opp., Dkt. 18. For the following reasons, Gerling's petition in GRANTED in part and DENIED in part.

**BACKGROUND**

Gerling, a German insurance company, issued an excess liability insurance policy (the "Policy"), effective August 1, 1998, through July 31, 1999, to Tosco Corporation ("Tosco"), a petroleum refining company. Pet. Mem. of Law at 3. Tosco, which was succeeded in interest by P66, thereafter notified Gerling "that it faced liability for loss and defense costs arising out of

---

[1] For the remainder of this opinion, the Court refers to the two decisions made in the order separately, even though the Tribunal announced them together. *See generally* Tribunal Order, Dkt. 6, Ex. 4.

[its] sale of petroleum products containing Methyl Tertiary Butyl Ether ['MtBE'']."  Petition ¶ 7.

On November 8, 2011, the parties signed an agreement which amended the arbitration clause in

the Policy and set the location for arbitration of all MtBE claims as New York.  Pet. Mem. of

Law at 3 (citation omitted).

P66 initiated arbitration on January 25, 2013.  *Id.*  Since then, "P66's MtBE related

liabilities continue to evolve, and P66 has made claims under the Policy on an ongoing basis."

*Id.*  Accordingly, the "Tribunal has . . . remained constituted to resolve coverage issues . . . with

the arbitration proceeding in 'phases' and the Tribunal issuing partial awards finally resolving

coverage issues arising within and at the end of each phase."  *Id.*

As is relevant to the instant Petition, on July 13, 2021, Gerling reimbursed P66

$725,412.94 pursuant to the Policy's "Loss Payable" condition.  *Id.* at 5.  That condition

provides that liability under the Policy attaches once the Insured has "paid the amount of the

underlying limits or the retention amount"[2] and "the Insured [] make[s] a definite demand [to the

Insurer] for payment for any amount . . .  within twelve (12) months after the Insured [] [has]

paid such amount."  *Id.* at 4 (citation omitted).  Gerling interpreted the condition to set a time

bar: it was required to reimburse defense costs presented within 12 months of such costs having

been paid by P66, but it was not required to reimburse defense costs that were paid more than 12

months before the request was presented.  *Id.* at 5.  P66 disagreed with that interpretation and

argued that the "time bar did not begin to run until such time as the underlying cases which were

allegedly subject to coverage were resolved either by settlement or court judgment."  *Id.*  The

parties engaged the Tribunal to resolve the dispute.  *Id.*  On November 26, 2021, the Tribunal

decided that (1) the contractual limitation period does not begin to run until the underlying cases

---

[2]       P66's covered losses "exceeded the $100 million attachment point of the Policy" in 2019, thereby making
Gerling's coverage the operative layer.  Pet. Mem. of Law, Dkt. 8 at 3–4.

are resolved by settlement or court judgment, (2) P66 cannot present claims to Gerling until the underlying cases are resolved by settlement or court judgment, and (3) Gerling has no obligation to pay P66 until the underlying cases are resolved by settlement or court judgment. *Id.* at 5–6; *see* Phase 4 Mot., Dkt. 6-3, Ex. 3 at 15.

Following the Tribunal's decision, Gerling asked P66 to repay the $725,412.94 because the underlying cases connected to those expenses had yet to be resolved. Pet. Mem. of Law at 6. When P66 refused, Gerling asked the Tribunal to decide the issue of repayment and to correct clerical errors in its November decision. *Id.* On December 21, 2021, the Tribunal issued an order: (1) "grant[ing] Gerling's request for relief regarding the payment of defense costs and direct[ing] P66 to reimburse Gerling the sum of $725,421.94" ("Decision One"); and (2) correcting clerical errors from the November 26, 2021, decision and reaffirming the interpretation of the Loss Payable condition ("Decision Two").[3] *Id.* at 6–7.

Gerling now seeks to have the Tribunal's December 21, 2021, order confirmed by this Court. *Id.* at 7. P66 opposes Gerling's Petition, arguing that the Tribunal's decisions are interlocutory and therefore not subject to confirmation under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Resp. Opp. at 1.

---

[3]       P66 returned the $725,412.94 to Gerling by wire transfer "six days before Gerling filed this Petition." Resp. Opp., Dkt. 18 at 4. Gerling argues that the "mere fact that payment has been made does not foreclose confirmation of an award" and persists with its request to confirm both decisions of the Tribunal. Pet. Reply, Dkt. 19 at 3 n.1 (citing *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 239 (S.D.N.Y. 2003)).

## DISCUSSION

### I.      Legal Standard

Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral

Awards (the "New York Convention"), 9 U.S.C. §§ 201 *et seq.*, a district court shall confirm a

non-domestic arbitral award "unless it finds one of the grounds for refusal or deferral of

recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.[4]

While the New York Convention provides the grounds for declining to confirm a non-domestic

arbitral award, the FAA provides additional opportunities for vacatur if the non-domestic award

was rendered in the United States.  *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126

F.3d 15, 21 (2d Cir. 1997).[5]   This includes vacatur "where the arbitrators exceeded their powers,

or so imperfectly executed them that a mutual, final, and definite award upon the subject matter

submitted was not made."[6]  9 U.S.C. § 10(a).

The parties do not contest whether the Tribunal's decisions were correct, whether the

arbitrators had the power to make the decisions at issue, or whether the decisions were wise; the

sole issue before the Court is whether the Tribunal's decisions constitute final and definite

awards, and consequently, whether this Court has the power to confirm them.

---

[4]      Those grounds include: (a) the agreement is not valid under the law or a party was under some incapacity;
(b) the party against whom the award is invoked was not given proper notice of the arbitration; (c) the award deals
with a difference not contemplated by or not falling within the terms or scope of the submission to arbitration; (d)
the composition of the arbitral authority or the procedure used does not follow the parties' agreement; or (e) the
award has not yet become binding on the parties or was otherwise set aside.  *Yusuf Ahmed Alghanim & Sons v. Toys
"R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (quoting art. V(1) of the Convention).

[5]      The Tribunal held all its proceedings in New York City.  Petition, Dkt. 6 ¶ 4.

[6]      The remaining grounds for vacatur under the FAA include circumstances where: "(1) the award was
procured by corruption, fraud, or undue means; (2) the arbitrators exhibited evident partiality or corruption; [or] (3)
the arbitrators were guilty of misconduct such as refusing to hear evidence pertinent and material to the controversy
or any other misbehavior that prejudiced the rights of any party."  *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F.
App'x 45, 47 (2d Cir. 2018) (quoting 9 U.S.C. § 10(a)) (internal quotation marks omitted).

For an award to be "final" and "definite," "the award must both resolve all the issues submitted to arbitration, *and* determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award." *Puerto Rico Mar. Shipping Auth. v. Star Lines Ltd.*, 454 F. Supp. 368, 372 (S.D.N.Y. 1978) (emphasis added) (citations omitted). This typically includes a determination "not only [on] the issue of liability of a party on the claim, but also [on] the issue of damages." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) (citing *id.* at 373–74). "Disposition of an issue that is severable from other issues still before the arbitrators may [also] be deemed final and subject to confirmation." *Sperry Int'l Trade, Inc. v. Gov't of Israel*, 532 F. Supp. 901, 906 (S.D.N.Y.), *aff'd*, 689 F.2d 301 (2d Cir. 1982) (citation omitted); *see also*, *e.g.*, *Star Lines*, 454 F. Supp. at 372 ("[I]f an award is valid in part and invalid in part, and the valid portion concerns claims that are 'separable' from and 'non-dependent' on claims covered by the invalid portion, the valid portion of the award is confirmable, notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration.") (citation omitted).

P66 contends that this Court would exceed its jurisdiction by granting Gerling's Petition because the Tribunal's decisions are interlocutory orders rather than final awards. Resp. Opp. at 5. P66 advances six points in support of its position, arguing that (1) the decisions do not resolve any issue of liability or damages as to any claim in the arbitration, (2) the decisions do not involve an action that a party has not yet undertaken, (3) the decisions "serve as a preparation and a basis for further decisions by the Panel in Phase 4 of the arbitration," (4) if either party wishes to challenge the decisions, the Tribunal "will consider a request that it include such ruling or rulings at the conclusion of Phase 4 of this arbitration into the next Partial Final Award that [it] may be required to issue," (5) the decisions include "order" rather than "award" in their titles,

and (6) P66 had already made the required payment to Gerling before the petition was filed. *Id.* at 6–7.

## II.      Decision One Is a Final Award Subject to Confirmation

P66's arguments against confirmation of the Tribunal's first decision are unavailing.  In requiring P66 to repay the $725,412.94 that Gerling prematurely paid, the Tribunal issued an award that required specific action and did not serve as a preparation or basis for further decisions.  The claim for repayment was, instead, a "separate and independent claim" and can be confirmed even though it does not, in and of itself, dispose of all claims. *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986).  This is true even if the decision requiring repayment is a product of the Tribunal's interpretation of the Loss Payable term, because the repayment has no bearing on future claims and is, therefore, a severable issue. *Sperry Int'l Trade*, 532 F. Supp. at 906.  The Tribunal's choice to call the decision an "order" rather than an "award" does not alter its finality; "its very purpose [was] to clarify the parties' rights in the 'interim' period pending a final decision on the merits." *S. Seas Navigation Ltd. of Monrovia v. Petroleos Mexicanos of Mexico City*, 606 F. Supp. 692, 694 (S.D.N.Y. 1985). While P66 has since paid the amount, because confirmation "is a summary proceeding . . . which is not intended to involve complex factual determinations," the fact that the arbitration award has been complied with is not a ground for refusing to confirm it. *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citation omitted).[7]

Because Decision One was a final award, the court must confirm it unless there is a basis for vacating, modifying, or correcting it. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  "There is nothing malleable about 'must grant,' which unequivocally tells courts to

---

[7]      Although compliance is not a ground to deny a request for confirmation, the Court does wonder why Gerling believed this action was a worthwhile expenditure of time or money.

grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008).

Respondent presents none of the grounds for not confirming the award, aside from the rejected contention that the award is interlocutory.  None of the conditions for vacatur is present, and because the undisputed facts show that the moving party is entitled to judgment as a matter of law, the Tribunal's decision requiring P66 to reimburse Gerling's payment is confirmed.

### III.   Decision Two Is Not a Final Award and Therefore Cannot Be Confirmed

Unlike Decision One, Decision Two is a partial award that does not "finally dispose of an independent claim." *Kerr-McGee Refining Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991).  Instead, it serves as an intermediate procedural decision; "[i]n preparation for Phase 4" of the arbitral proceedings, it establishes the timeline by which P66 must submit claims to Gerling.[8] Resp. Opp. at 3; *see also Michaels*, 624 F.2d at 415 ("[F]or the court to entertain review of intermediary arbitration decisions involving procedure or any other interlocutory matter, would disjoint and unduly delay the proceedings, thereby thwarting the very purpose of [arbitration].") (quoting *Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.*, 43 N.Y.2d 276, 282 (1977)). The Tribunal's interpretation of the Loss Payable contractual clause in Decision Two "merely decide[s] issues that bear on future determinations as to claims that still must be made . . . in order to establish liability." *Fluor Daniel Intercontinental, Inc. v. Gen. Elec. Co.*, No. 06-CV-

---

[8]      While a decision must typically resolve issues related to both liability and damages to be final, "if the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue." *Trade & Transp., Inc. v. Nat. Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991).  That exception, however, has only been recognized when the parties expressly bifurcated issues of liability and damages.  *See id.*; *see also Employers' Surplus Lines Ins. Co. v. Global Reinsurance Corp.*, No. 07-CV-2521, 2008 WL 337317, at *5 (S.D.N.Y. Feb. 6, 2008) (holding that the exception did not apply because parties did not ask arbitrator to bifurcate liability and damages).  Here, the parties did not request a final partial award as to this issue, and Decision Two does not concern liability in the first place.  Rather, it simply resolves the procedural issue of when P66 can present its claims.

3294, 2007 WL 766290, at *4 (S.D.N.Y. Mar. 13, 2007); *see also Gengo v. City Univ. of New York*, No. 98-CV-6995, 1999 WL 397506, at *3 (S.D.N.Y. June 15, 1999) (holding that a tribunal's decision could not be confirmed because it did not decide the merits of the claim).

Gerling relies on *R & Q Reinsurance Co. v. Utica Mutual Ins. Co.*, 18 F. Supp. 3d 389, 393 (S.D.N.Y. 2014), to argue otherwise.  Pet. Reply, Dkt. 19 at 8.  While the court in *R & Q* held that a decision can be final and definite even if the tribunal was tasked with a conceptual rather than mathematical task, the posture of *R & Q* was entirely different from this case.  The tribunal in *R & Q* had resolved all issues — both scheduled and contemplated — in its conceptual determinations.  Reinforcing the finality of its decision, the tribunal was dissolved ninety days after the decision was rendered.  18 F. Supp. 3d at 395.  In contrast, these parties approached the issue underlying Decision Two with the intention of resolving an issue that would set the "framework for the payment of defense costs . . . [for] the three remaining MtBE claims (essentially Phase 4 of this proceeding)," Phase 4 Mot. at 5, and the Tribunal remained in place following its decision, Pet. Reply, Dkt. 19-7, Ex. 11.  Moreover, the Tribunal informed the parties that if they wished "to challenge any aspect of the . . . . Order . . . [it would] consider a request that it include such ruling or rulings at the conclusion of Phase 4 of this arbitration into the next Partial Final Award that the [Tribunal] may be required to issue," further reinforcing the lack of finality and the expectation of future proceedings.[9]  Tribunal Order, Dkt. 6, Ex. 4 at 5. The expectation of future proceedings is sufficient to show a lack of finality because even though

---

[9]     Although the Tribunal did not explicitly state to which decision that language applies, it can only logically apply to Decision Two.  Its application to Decision One would not benefit either party because the issue of repayment has no bearing on the issue of liability, and instead simply serves to maintain the status quo until liability is decided.  The repayment neither forecloses P66 from receiving the same amount of money (or more) upon a finding that Gerling owes P66 coverage, nor a finding that Gerling does not owe P66 $725,412.94; by the time the Tribunal makes a finding as to liability, there will be no value to the parties in challenging Decision One, as the temporary repayment will be irrelevant once the Tribunal determines the amount of money, if any, that Gerling owes to P66.

there are currently no live disputes — *i.e.*, disputes presently before the Tribunal — there are "issues covered by the arbitration agreement" that have yet to be resolved and that may rely on Decision Two to determine the timeliness of the claims.  Pet. Reply, Dkt. 19-7, Ex. 11.

For these reasons, the Court agrees with P66 that the Tribunal's second decision is an interlocutory award over which this Court has no authority.  Petitioner's motion for its confirmation of that decision is, therefore, denied.

## CONCLUSION

For the foregoing reasons, Petitioner's request to confirm the arbitration award in Decision One is GRANTED, and Petitioner's request to confirm Decision Two, an interlocutory award, is DENIED without prejudice. The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Date:  **August 26, 2022**
      **New York, NY**

                              **VALERIE CAPRONI**
                              **United States District Judge**